## Aetna Life Insurance Co. v. Crabtree.

(Decided January 23, 1912.)

### Appeal from Ballard Circuit Court.

Insurance, Accident—Action for Loss of Leg.—In an action against an insurance company, under a policy of accident insurance, for the loss of a leg, the weight of the testimony supports the plaintiff's contention that the loss of the leg resulted from injuries received on the occasion of a fire in a coach of a train, and not from a former injury as the company contended, and under the provision of Section 756, Civil Code, there being no error affecting the substantial rights of the company, the judgment recovered upon the policy must be affirmed.

LANSDEN & LANSDEN for appellant.

JOHN WICKLIFFE for appellee.

Opinion of the Court by Judge Lassing—Affirming.

On the 19th of April, 1909, Isaac W. Crabtree procured from the Aetna Life Insurance Company an accident policy, insuring him against accidental injury, and among the provisions of said policy was one whereby the company agreed to pay him $2,500 for the loss of a

leg by accidental means. At the time he took out this policy he was a passenger conductor on the Mobile & Ohio Railroad, running between Cairo, Illinois, and Okolona, Mississippi. On the 15th day of August, following, while coming north in Mississippi, one of the coaches of the train on which he was conductor caught fire in the roof, and while he and his porter and others were endeavoring to extinguish the fire, he claimed that he fell and bruised his right leg in two places above the ankle. At first he did not regard the injury as important and completed his trip to Cairo. On the day following, though feeling badly, he started on the return trip, and went as far as Jackson, Tennessee, where at his request, he was relieved from duty. He had his leg treated at Cairo for some time, and finally it became necessary to have it amputated below the knee. This was done in November. In December following, he made out and forwarded to the company proof of his injury and loss. The company, after having investigated the case, declined to pay him, on the ground that the loss of his leg was not due to an accident; but to an injury which had occurred many years before and had left his leg in a diseased condition. Suit was thereupon instituted and the case tried out on the question at issue, with the result that the plaintiff recovered a verdict for $2,500. Judgment having been entered thereon, the company appeals.

On the question of fact as to whether or not the plaintiff was injured in the way and manner alleged, the issue was sharply drawn in the proof. Plaintiff stated that he was injured by a fall received while trying to extinquish the fire; that prior to that time his leg was in good condition, and that his disability and the subsequent amputation were caused by this accident alone. He admitted that when he was a boy he had at one time skinned his foot and bruised his shin on his left leg, and that this made his leg sore for some time, but said that it had fully recovered and that he had no other injury of any kind to either of his legs, and that he never at any time received a bodily injury while connected with any railroad other than that referred to in his pleadings and for which he sought recovery in this suit. He introduced the physician who treated his foot while a boy for the injuries referred to, and his testimony is in the main

corroborated by that of the physician to the effect that, as long as he had known him and been his family physician he had no injury to either of his legs other than that set out as resulting from a skinned shin, and this was on his left leg.

The company introduced several witnesses who testified that the plaintiff walked lame in one of his legs, though none of them was sure which. He accounts for this by stating that it was due to the fact that he had worked for many years in the railroad's employ in a capacity which required him to do much walking over cinder paths, thus causing bunions on his feet, which made him lame, and consequently he limped. The company also introduced certain witnesses, who testified that they had seen plaintiff when undressed, asleep in bed, and that they noticed a scar on one of his legs. None of them were entirely certain which leg it was, but most of them who attempted to fix it were of the opinion that it was his left leg. This is the leg which he says was injured while a boy, and not the one for which a recovery is sought in this case. The company also introduced evidence to the effect that the plaintiff had stated to certain parties that at one time he had been injured in a railroad wreck; but further than these statements which he is alleged to have made the company was unable to show that he had in fact ever been in a railroad wreck; and he denied making the statements or explained them as having been made merely in jest, and not in earnest. Since there was some evidence from which the jury might have found that the injury resulting in the loss of plaintiff's leg was due to some cause or other than the injury received while trying to extinguish the fire, the court properly submitted this disputed question of fact to the jury.

In support of its contention that the loss of plaintiff's leg was due to an old injury, rather than the one received while trying to extinguish the fire, the company claimed that the answers made by the plaintiff to several of the questions propounded in his application for this insurance were false. By an appropriate plea this allegation of the answer was denied, and this mooted question was likewise submitted to the jury.

Counsel complains that instruction number one was

misleading, in that the jury may have regarded the language in the following parenthetical clause in said instruction, to-wit, "which injuries were external bruises inflicted solely through external, violent and accidental means," as a statement of fact by the court, that the injuries to the plaintiff's leg were, in fact, inflicted or received in the manner charged. The policy required that the bruises must have been inflicted solely through external, violent and accidental means before any recovery would be allowed or justified, and hence it would have been error for the court to have failed to tell the jury that the injury must have been inflicted in this manner to justify or authorize a recovery. There is no merit in this criticism.

The objection to the instruction number three is technically correct, for the principle is well settled by the opinions of this court, that where questions are asked in an application for insurance relative to the applicant's health, condition, or past history, which are clearly within the applicant's knowledge, he is bound by the answers which he makes to them. He warrants them to be true. This class of answers is distinguished from that other class, where the most that can be expected of applicant is that he gave his opinion. The answer to question No. 10 in the statement, and which is, as follows: "My habits of life are correct and temperate; my hearing is not impaired; I have not lost sight of either eye, nor have I had cataract or any disease of either eye; I have never had fits or diseases of the brain or spinal chord, hernia, bodily or mental infirmity; I am not deformed and have not sustained any severe bodily injury, except as herein stated;" falls clearly within the former class. The applicant must have known definitely how to answer every part of this question. It is impossible that he should not have known; and hence the court should have required the jury to find that the answer to this question and each part of it was true before a recovery would be authorized on the policy. The same may be said of the answers to the other questions propounded, to which objection is made. The answers to these questions may have been material to the risk, but there is no evidence introduced by appellant showing this fact, and, in the absence of such showing, we do

not feel authorized in directing a reversal, especially when there is no positive evidence, but merely a suspicion brought out by the evidence, that appellee may have theretofore received an injury which resulted in the loss of his leg.

The objection to instruction five is not well taken. This was defendant's instruction; and when the court told the jury that if they did not believe that the injury was received by the plaintiff, as alleged, on the 15th of August, but from other cause, they should find for the defendant; its theory of the case was fully presented. Plaintiff was limited in instruction number one to a recovery in the event that the loss of his leg was due to external injuries accidentally caused while trying to extinguish the fire on August 15th; and in instruction number five the court practically told the jury that, unless his injuries were so received at that time, no recovery should be allowed.

The instructions, while not accurately drawn, did not mislead the jury. Evidently, the members thereof were of opinion that the injury which resulted in the loss of plaintiff's leg was received while he was attempting to extinguish this fire. The issue was not a complicated one. Plaintiff insisted that the loss of his leg was due to injuries received at the fire; while the company contended that it resulted from an injury which he had received many years before, and that at the time of the fire the leg was in a diseased condition. The decided weight of the testimony supports plaintiff's contention, and giving due regard to that provision of the code, Section 756, which provides that a judgment shall not be reversed or modified except for an error to the substantial rights of the party complaining thereof, the judgment must be affirmed.